J-S52022-18, J-S52023-18

2018 PA Super 397

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
v. :
:
:
:
PIETRINA CECILIA HOFFMAN :
:
: No. 1984 MDA 2017

Appeal from the Order Entered November 21, 2017
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000373-2016

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
PIETRINA CECILIA HOFFMAN :
:
Appellant : No. 2002 MDA 2017

Appeal from the Judgment of Sentence Entered November 29, 2017
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000373-2016

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and STRASSBURGER*, J.

OPINION BY McLAUGHLIN, J.: **FILED OCTOBER 31, 2018**

After a jury found Pietrina Cecilia Hoffman guilty of various crimes in the tragic death of an infant, N.D., the trial court granted her motion for a judgment of acquittal on the convictions for third-degree murder and aggravated assault, concluding that the Commonwealth had failed to present sufficient evidence of malice. The Commonwealth has appealed from the order entering the judgments of acquittal. Hoffman has also filed an appeal and challenges her judgment of sentence on various grounds.

_____
* Retired Senior Judge assigned to the Superior Court.

We now consolidate the two appeals, and for the reasons that follow, we affirm the trial court in all respects, with one exception. As the court imposed sentence on Hoffman for two counts of endangering the welfare of a child, graded as felonies of the third degree, without any evidence establishing a course of conduct and where the jury was not charged to make such finding, we vacate the judgment of sentence and remand.

We derive the following statement of facts from the trial court's opinion addressing Hoffman's post-sentence motion. *See* Trial Ct. Opinion, filed 11/21/2017, at 10-17. In the afternoon of January 10, 2016, emergency personnel were dispatched to Hoffman's residence, where they discovered an infant, later identified as N.D., lying on the floor, dead. Also present were Hoffman and another young child, A.W. In her initial statement to police, Hoffman indicated that she went to sleep with A.W. on a loveseat in her living room. She said she had put N.D. to sleep on the floor with a blanket because she wouldn't sleep in her playpen. According to Hoffman, she woke at 2:00 a.m., noticed that N.D. was purple and cold to the touch, and fell back asleep until 2:00 p.m., whereupon she called 9-1-1.

Thereafter, Hoffman gave two statements to police in which certain details of her story changed. These discrepancies made it difficult for authorities to establish a timeline of events leading to N.D.'s death. For example, in her first statement, Hoffman suggested that N.D. was warm at 5:00 a.m., but that she was unsure if N.D. was breathing. In a second statement, Hoffman indicated that N.D. was *both* alive and dead at 5:00 a.m.

Hoffman maintained that if she knew something was wrong, she would have called 9-1-1. In both of her statements to police, Hoffman indicated that she had taken numerous sleeping aids over the course of the day preceding N.D.'s death, including several Soma pills, liquid ZzzQuil, and a morphine pill. Further, during her second statement, Hoffman openly wondered how she had suffered a bruise to one leg and if she had fallen off the loveseat onto N.D.

At trial, the Commonwealth presented expert testimony from the coroner, who concluded that N.D. died from asphyxiation by smothering approximately four to 12 hours before emergency personnel arrived. The coroner also found evidence of abrasions and internal hemorrhaging. According to the coroner, N.D. suffered an impact, followed by significant weight and pressure lasting approximately two minutes. The coroner agreed that the injuries suffered by N.D. could have been caused by a large person falling off a couch in her sleep or drug-induced stupor onto the child. The coroner also suggested that N.D. may have survived if resuscitation efforts had been started immediately.

The children's caretaker, Cecelia Gray, testified that Hoffman cared for the children several days per week and that Hoffman mistakenly believed that she was A.W.'s grandmother. According to Gray, Hoffman had discussed adopting the children. On the day preceding N.D.'s death, Hoffman had taken her for medical treatment because of a cold.

Following trial, a jury convicted Hoffman of third-degree murder, involuntary manslaughter, aggravated assault, two counts of endangering the

welfare of a child, two counts of recklessly endangering another person, and person not to possess a firearm.[1] After a presentence investigation, the trial court sentenced Hoffman to an aggregate 17 to 34 years of incarceration.

Hoffman timely filed a post-sentence motion, asserting (1) the sentence for endangering the welfare of a child merges with involuntary manslaughter; (2) imposition of the sentencing enhancement defined at 204 Pa.Code § 303.9 violates the mandates of **Apprendi v. New Jersey**, 530 U.S. 466 (2000);[2] (3) the court erred in permitting the Commonwealth to amend its Information after presentation of its case in chief; and (4) the Commonwealth failed to present sufficient evidence of malice as required to establish third-degree murder and aggravated assault. Hoffman's Post-Sentence Motion, 08/16/2017. Following briefing by the parties, the trial court granted judgment of acquittal on Hoffman's fourth claim and vacated her judgment of sentence, but denied all other relief. **See** Order, 11/21/2017. Thereafter, the court resentenced Hoffman to an aggregate five years and nine months to 12 years of incarceration.

The Commonwealth timely appealed from the order granting in part Hoffman's post-sentence motion and, in its Pa.R.A.P. 1925(b) statement,

---

[1] **See**, respectively, 18 Pa.C.S.A. §§ 2502(c), 2504(a), 2702(a)(1), 4304(a)(1), 2705, and 6105.

[2] In relevant part, the enhancement adds 24 months to the lower limit of the standard range of the sentencing guidelines and sets the statutory limit as the upper limit. 204 Pa.Code § 303.9(k). The enhancement further references the statutory requirement that "[t]he sentence imposed will be served consecutively to any other sentence." **Id.** (citing 42 Pa.C.S.A. § 9711.1).

challenged the court's conclusion that the Commonwealth had failed to establish malice. Hoffman timely appealed from the judgment of sentence. In her court-ordered Pa.R.A.P. 1925(b) statement, Hoffman renewed claims first made in her post-sentence motion that were rejected by the court and further asserted that the Commonwealth had presented insufficient evidence to sustain a conviction for recklessly endangering another person as to A.W. In a responsive statement to the parties' appeals, the trial court directed this Court's attention to its November 21, 2017 opinion. The trial court also concluded that Hoffman's sufficiency claim was waived for failing to specify the elements of reckless endangerment that the Commonwealth failed to establish. *See* Trial Ct. Pa.R.A.P. 1925(a) Statement.

## The Commonwealth's Appeal

In its appeal, the Commonwealth asserts the trial court erred when it determined that the Commonwealth had presented insufficient evidence of malice necessary to support a conviction for either third-degree murder or aggravated assault. *See* Commonwealth's Br. (as Appellant) at 4. According to the Commonwealth, viewed in the light most favorable to it as the verdict winner, the evidence clearly established malice. *Id.* at 15. In particular, the Commonwealth asserts that Hoffman's "decision to return to bed after believing [N.D.] may be dead was more than likely the result of her self-induced cocktail of medication." *Id.* The Commonwealth maintains that, had Hoffman sought help immediately, N.D. might have survived. *Id.* at 19. Moreover, according to the Commonwealth, Hoffman's inconsistent

statements to police regarding the timeline of events demonstrated a guilty conscience. *Id.* at 18. Finally, the Commonwealth suggests that the jury was free to infer from the coroner's testimony that the initial force of impact suffered by N.D. was intentional. *Id.* at 20.

Procedurally, in her post-sentence motion, Hoffman sought judgment of acquittal as to third-degree murder and aggravated assault. In so doing, Hoffman challenged the sufficiency of the evidence presented to establish the element of malice, required for both crimes. The following standard is well settled:

> In passing upon a post-verdict motion for judgment of acquittal, a trial court is limited to determining the presence or absence of that quantum of evidence necessary to establish the elements of the crime. To determine the legal sufficiency of evidence supporting a jury's verdict of guilty, this Court must view the evidence in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. We then determine whether the evidence is sufficient to permit a jury to determine that each and every element of the crimes charged has been established beyond a reasonable doubt. It is the function of the jury to pass upon the credibility of the witnesses and to determine the weight to be accorded the evidence produced. The jury is free to believe all, part or none of the evidence introduced at trial. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the jury unless the evidence be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Feathers***, 660 A.2d 90, 94-95 (Pa.Super. 1995) (formatting modified; internal quotation marks and citations omitted).[3]

In Pennsylvania, murder is a killing conducted with "malice aforethought." ***Commonwealth v. Packer***, 168 A.3d 161, 168 (Pa. 2017) (citing ***Commonwealth v. Santos***, 876 A.2d 360, 363 (Pa. 2005)). Murder of the third degree is defined as "[a]ll other kinds of murder," *i.e.*, in contrast to those murders committed intentionally (first-degree) or during the perpetration of a felony (second-degree). 18 Pa.C.S.A. § 2502. In relevant part, aggravated assault is established where a defendant "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). The *mens rea* required for both third-degree murder and aggravated assault is malice. ***Packer***, 168 A.3d at 168 (noting that "only the result of the crimes differ").

Our Supreme Court has defined malice as follows:

[I]t is not malice in its ordinary understanding alone, a particular ill-will, a spite or a grudge. Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

---

[3] We note that a factfinder's verdict of acquittal is not subject to further review. ***Feathers***, 660 A.2d at 94. However, a trial court's decision overturning the factfinder's verdict based upon the sufficiency of the evidence is subject to appellate review. ***Id.***

*Id.* at 168 (quoting *Commonwealth v. Drum*, 58 Pa. 9, 15 (1868)). Further, our Supreme Court has recognized that "ordinary recklessness" is not sufficient to establish malice.

> Between the recklessness or culpable negligence necessary to support the charge of involuntary manslaughter, and the specific intent to kill which is a prerequisite of murder of the first degree, there is a class of wanton and reckless conduct which manifests such an extreme indifference to the value of human life which transcends the negligent killing and reaches to the level of malice.

*Id.* at 168-69 (quoting *Commonwealth v. Taylor*, 337 A.2d 545, 548 (1975)). "The quintessential example of the level of recklessness required to constitute malice is a defendant who shoots a gun into a crowd." *Id.* at 169.

As noted by the trial court, "[t]his was a deeply distressing case." Trial Ct. Opinion at 18. The court concluded that the Commonwealth had established that Hoffman was grossly negligent but that it had failed to establish that Hoffman acted with malice. *Id.* In particular, the court noted that the sole theory presented by the Commonwealth, through the coroner's testimony, was that Hoffman rolled off a couch onto N.D. while in a drug-induced stupor. *Id.* at 19. The court was of the opinion, however, that the Commonwealth had failed to provide evidence that, by taking the medication, Hoffman consciously disregarded an extremely high risk that her actions would result in one of the children's death. *Id.* at 20-21; *but see, e.g.*, *Packer*, 168 A.3d at 170-71 (concluding that defendant's actions constituted malice where defendant huffed an illicit drug both immediately prior to and while

- 8 -

operating vehicle on public highway, knowing from experience effects were immediate and debilitating).

The court also rejected the Commonwealth's contention that Hoffman's delay in seeking emergency help caused N.D.'s death and established malice. *Id.* at 21 (citing in support **Commonwealth v. Barnhart**, 497 A.2d 616 (Pa.Super. 1985) ("Conviction for involuntary manslaughter requires proof that the death was 'a direct result' of appellants' failure to seek medical treatment."). The court stated that, despite inconsistencies in Hoffman's statements to police, no evidence suggested "how long [N.D.] had stopped breathing before Hoffman became aware that she had stopped." *Id.* Indeed, as noted by the court, the Commonwealth asked the jury to conclude that N.D. died *because* Hoffman failed to wake when she fell from the couch. *Id.* at 23.

The trial court addressed the Commonwealth's consciousness of guilt argument. As noted by the court, this argument "adds little to the resolution of the issues." *Id.* at 26. Clearly, while the jury was free to conclude that Hoffman's statements to police displayed consciousness of guilt, there was no evidence to suggest the crime for which she felt guilty or that her statements evinced anything more than a general sense of responsibility for the infant's death. *Id.* (concluding that the statements "say nothing about the distinction between murder and manslaughter").

Finally, the court dismissed the Commonwealth's belated suggestion that the jury could have inferred from the evidence that Hoffman intentionally

suffocated N.D. *Id.* at 26-27 (noting that the Commonwealth's argument is "completely at odds with [its] decision to withdraw the first[-]degree murder charge prior to trial"). We, too, reject this suggestion, as the record does not support such an inference. At no time did the Commonwealth solicit testimony suggesting that the injuries suffered by N.D. were intentional. To the contrary, on direct examination and in response to a hypothetical proposed by the Commonwealth, the coroner testified that N.D. could have suffered the injuries described when an adult person fell upon the child "while sleeping or in a drug-induced stupor." Notes of Testimony (N.T.), 06/27-28/2017, at 68-69. Thereafter, on cross-examination, the coroner clarified that his designation of the manner of death, here homicide, "does not imply animus or intent or anything that, [sic] of that nature." *Id.* at 79. When asked if N.D.'s death could have been accidental and presented again with a hypothetical nearly identical to that posed by the Commonwealth, the coroner agreed that the injuries suffered by N.D. could have occurred "if someone fell off a couch approximately one and a half, two feet weighing in excess of 200 pounds in their sleep onto the child." *Id.* at 80.

For these reasons, following our review of the record, the parties' briefs, and the relevant law, we agree with the trial court's well-reasoned analysis. Trial Ct. Opinion at 8-27. Thus, as the Commonwealth failed to establish malice, we affirm the judgment of acquittal as to third-degree murder and aggravated assault. *See Packer*, 168 A.3d at 168-69; *Feathers*, 660 A.2d at 94-95.

**Hoffman's Appeal**

We now turn to the issues raised on appeal by Hoffman:

1. [Whether] endangering the welfare of a child [should] merge with involuntary manslaughter for sentencing purposes[.]

2. [Whether] the mandatory sentences set forth in [204 Pa.Code § 303.9] adding 24 months to the lower limit of the standard range and assigning the statutory limit as the upper limit of the standard guideline sentencing range [are] unconstitutional and [un]enforceable[.]

3. [Whether] the court err[ed] in allowing the Commonwealth to amend the criminal information on the charge of endangering the welfare of a child from the specific charge of starvation to a general charge after the Commonwealth had rested[.]

4. [Whether] the Commonwealth fail[ed] to present sufficient evidence to sustain the conviction on the charge of recklessly endangering another person as [to] the child [A.W.]

Hoffman's Br. (as Appellant) at 4 (unnecessary capitalization omitted).

In her first issue, Hoffman asserts that the crime of endangering the welfare of children merges with involuntary manslaughter for sentencing purposes. *Id.* at 9 (citing in support *Commonwealth v. Martir*, 712 A.2d 327 (Pa.Super. 1998); *Commonwealth v. Bird*, 597 A.2d 1169 (Pa.Super. 1991)). An assertion that crimes should merge for sentencing purposes raises a question of law, subject to our *de novo* review. *Commonwealth v. Martinez*, 153 A.3d 1025, 1031 (Pa.Super. 2016).

This claim is without merit. As the trial court noted, *see* Trial Ct. Opinion at 3, Hoffman cites case law that predates the enactment of 42 Pa.C.S.A. §

9765 (adopted December, 9, 2002; effective 60 days thereafter), which provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765. Involuntary manslaughter is defined as follows:

> A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S.A. § 2504(a). In relevant part, endangering the welfare of children is defined as follows:

> A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S.A. § 4304(a)(1). There is no commonality in the elements to these crimes. Accordingly, we discern no error in the court's decision denying Hoffman relief on this claim. 42 Pa.C.S.A. § 9765.

Next, Hoffman asserts that the sentencing enhancement set forth in 204 Pa.Code § 303.9(k) is unconstitutional. Hoffman's Br. (as Appellant) at 9. This claim is moot. The enhancement is applicable when the defendant is guilty of third-degree murder of a victim younger than age 13. 204 Pa.Code § 303.9(k). In relevant part, the enhancement adds 24 months to the lower limit of the

standard range of the sentencing guidelines and sets the statutory limit as the upper limit. *Id.* The enhancement further references the statutory requirement that "[t]he sentence imposed will be served consecutively to any other sentence." *Id.* (citing 42 Pa.C.S.A. § 9711.1). As we have affirmed the trial court's decision granting Hoffman judgment of acquittal on the charge of murder in the third degree, we do not review this claim.

Third, Hoffman asserts the court erred in permitting the Commonwealth to amend the Information to remove language from the count charging endangering the welfare of children as to A.W. *See* Hoffman's Br. (as Appellant) at 11. As described by Hoffman, the Information at first specifically alleged that Hoffman was starving A.W. *Id.* Following the Commonwealth's case in chief, during which it presented no evidence of starvation, the trial court granted the Commonwealth leave to amend to remove the allegation of starvation, leaving "general language of endangerment without any specifics." *Id.* According to Hoffman, this amendment was prejudicial because it "added a charge based on facts unknown" to her. *Id.* at 14.

This claim is without merit. A criminal information is a formal statement charging the commission of an offense. *See* Pa.R.Crim.P. 103. Its purpose "is to apprise the defendant of the charges . . . so that [the defendant] may have a fair opportunity to prepare a defense." *Commonwealth v. Brown*, 727 A.2d 541, 543 (Pa. 1999). The Commonwealth may amend an information, provided the defendant incurs no prejudice.

> The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564; *see Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa.Super. 2006). Relevant factors to consider when evaluating whether a defendant has been prejudiced by an amendment include:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Commonwealth v. Mentzer*, 18 A.3d 1200, 1203 (Pa.Super. 2011).

Here, as the trial court noted, the information initially alleged that Hoffman failed to provide A.W. adequate care, both "putting the child at risk *and* resulting in the beginning stages of starvation." Information, 06/02/2017, at 1 (emphasis added); *see* Trial Ct. Opinion at 7. The removal of the allegation relating to starvation did not prejudice Hoffman. We agree with the trial court that Hoffman was well aware that the Commonwealth was alleging that she had failed to provide proper care for A.W. due to the medication she had taken, as the Commonwealth presented the factual predicate for this

allegation during Hoffman's preliminary hearing. ***Id.***[4] Finally, as the trial court noted, in response to the Commonwealth's amendment, Hoffman sought no recess or continuance to adjust her strategy, nor has she suggested the manner in which her strategy was forced to change. ***Id.*** at 7-8. Thus, based upon these considerations, we agree that Hoffman incurred no prejudice when the Commonwealth amended the Information. ***See Mentzer***, 18 A.3d at 1203.

Next, Hoffman challenges the grading of both convictions for endangering the welfare of children as felonies of the third degree. ***See*** Hoffman's Br. (as Appellant) at 12-13.[5] She raises this issue for the first time in this case in her brief to this Court. Generally, issues not raised with the trial court are waived. ***See Commonwealth v. Rossetti***, 863 A.2d 1185, 1193 (Pa.Super. 2004); Pa.R.A.P. 302(a). However, "[a] claim that the court improperly graded an offense for sentencing purposes implicates the legality of a sentence." ***Commonwealth v. Pantalion***, 957 A.2d 1267, 1271 (Pa.Super. 2008). "[A] challenge to the legality of sentence is never waived and may be the subject of inquiry by the appellate court *sua sponte*." ***Rossetti***, 863 A.2d at 1193. She thus did not waive this issue. Our standard

---

[4] No transcript of a preliminary hearing appears in the certified record, but Hoffman does not challenge the court's assertion. ***See generally*** Hoffman's Br. (as Appellant).

[5] The Commonwealth has offered no counter-argument to Hoffman's challenge. ***See generally***, Commonwealth's Br. (as Appellee).

of review is *de novo*, and the scope of our review is plenary. ***Commonwealth v. Felder***, 75 A.3d 513, 515 (Pa.Super. 2013).

From the time of Hoffman's criminal conduct and the filing of charges through the date of her trial and conviction, child endangerment was defined as follows:

> (a) Offense defined.--
>
> > (1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.
> >
> > (2) A person commits an offense if the person, in an official capacity, prevents or interferes with the making of a report of suspected child abuse under 23 Pa.C.S. Ch. 63 (relating to child protective services).
> >
> > (3) As used in this subsection, the term "person supervising the welfare of a child" means a person other than a parent or guardian that provides care, education, training or control of a child.
>
> (b) Grading.--An offense under this section constitutes a misdemeanor of the first degree. However, where there is a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.

18 Pa.C.S.A. § 4304 (eff. 01/29/2007 to 08/27/2017).[6]

---

[6] In contrast, the current statutory language has redefined the grading of this offense:

> (b) Grading.--
>
> (1) Except as provided under paragraph (2), the following apply:

Here, as noted by Hoffman, "no course of conduct was charged after removing starvation from the criminal information[,] and the jury was not charged to determine a course of conduct." Hoffman's Br. (as Appellant) at 13. Thus, according to Hoffman, "the convictions can rise no higher than a misdemeanor of the first degree." *Id.* We agree.

In *Commonwealth v. Popow*, 844 A.2d 13 (Pa.Super. 2004), we addressed this issue. In that case, Popow was charged with various offenses including endangering the welfare of a child, following an altercation between him, his ex-girlfriend, and others. *Id.* at 15. At one point during the altercation, Popow picked up his four-year-old daughter, and when his ex-girlfriend and others tried to retrieve the child from him, Popow fell down a

---

(i) An offense under this section constitutes a misdemeanor of the first degree.

(ii) If the actor engaged in a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.

(iii) If, in the commission of the offense under subsection (a)(1), the actor created a substantial risk of death or serious bodily injury, the offense constitutes a felony of the third degree.

(iv) If the actor's conduct under subsection (a)(1) created a substantial risk of death or serious bodily injury and was part of a course of conduct, the offense constitutes a felony of the second degree.

(2) The grading of an offense under this section shall be increased one grade if, at the time of the commission of the offense, the child was under six years of age.

18 Pa.C.S.A. § 4304(b) (eff. 08/28/2017).

- 17 -

flight of stairs while holding the child. *Id.* Popow was convicted and sentenced on the endangerment charge graded as a felony. *Id.* On appeal, he challenged the legality of his sentence, asserting (1) neither the information nor the evidence made out a course of conduct that would raise the charge from a misdemeanor to a felony and (2) the jury was not instructed to make a finding on course of conduct. *Id.* We agreed, concluding that "in order to be graded as a third-degree felony, the Commonwealth must allege in the information and present evidence at trial of the additional factor of 'course of conduct,' and the jury must be instructed on such." *Id.* at 18. We thus remanded for resentencing. *Id.* at 18.

Here, neither of the child endangerment counts alleged a course of conduct. Count Five alleged conduct as to N.D.:

COUNT 5: ENDANGERING WELFARE OF CHILD – (FELONY 3)

Being a guardian or other person supervising the welfare of a child under 18 years of age, namely, [N.D.], age (14) months old, did knowingly endanger the welfare of said child by violating a duty of care, protection or support by failing to provide adequate care to said young child resulting in her death, all of which constitutes Endangering Welfare of Children—As Guardian, in violation of Section 4304(a)(1) of the Pennsylvania Crimes Code, Act of December 6, 1972, as amended, [18 Pa.C.S. Section 4304(a)(1)].

Information, 06/02/2017, at 1 (bold-type removed; otherwise verbatim). Following its amendment, the Commonwealth alleged the following conduct as to A.W.:

COUNT 6: ENDANGERING WELFARE OF CHILD – (FELONY 3)

- 18 -

Being a guardian or other person supervising the welfare of a child under 18 years of age, namely, a (2) year old juvenile, did knowingly endanger the welfare of said child by violating a duty of care, protection or support by failing to provide adequate care to said young child putting the child at risk, all of which constitutes Endangering Welfare of Children—As Guardian, in violation of Section 4304(a)(1) of the Pennsylvania Crimes Code, Act of December 6, 1972, as amended, [18 Pa.C.S. Section 4304(a)(1)].

*Id.*

Further, the Commonwealth acknowledged that there was no evidence of starvation (as to either child), nor did it present other evidence in support of a course of conduct finding. To the contrary, in support of the endangerment charges, the Commonwealth referenced the medication consumed by Hoffman. *See* N.T. at 211, 237.[7] Finally, the Commonwealth did not request, and the trial court did not instruct the jury on course of conduct. *See id.* at 215, 253-54.

For these reasons, the trial court erred when it sentenced Hoffman for two counts of endangering the welfare of children graded as felonies of the

---

[7] The Commonwealth also referenced coffee grounds found on the floor. N.T. at 211, 237. In a statement given to police, Hoffman stated that she had made coffee at 5:00 a.m., but went back to sleep, and when she awoke at 2:00 p.m., she discovered coffee grounds on the floor. *See id.* at 192-93. The coroner testified that he found coffee grounds in N.D.'s stomach (further opining that they were ingested well prior and unrelated to the asphyxiation event), and the resulting level of caffeine in N.D.'s blood was well below any toxic range. *Id.* at 62-63, 74-78, 80-81. While the jury was free to infer that the coffee grounds were hazardous to the children, the presence of coffee grounds does not transform Hoffman's conduct during the early morning hours of January 10, 2016, into a course of conduct. *See Popow*, 844 A.2d at 17 ("[T]he logical interpretation of the legislative language in subsection (b) is that it is designed to punish a parent who over days, weeks, or months, abuses his children, such as repeatedly beating them or depriving them of food.")

third degree. We therefore vacate the judgment of sentence imposed for these crimes and remand for resentencing with consideration of the Sentencing Guidelines for these crimes graded as misdemeanors of the first degree. *Popow*, 844 A.2d at 18. Moreover, as the court ordered Hoffman to serve these sentences consecutively to those imposed for involuntary manslaughter and the firearm offense, *see* N.T. Resentencing, 11/29/2017, at 12, our ruling may upset the court's sentencing scheme. Accordingly, we remand for resentencing on all counts. *See, e.g.*, *Commonwealth v. Serrano*, 61 A.3d 279, 287-88 (Pa.Super. 2013).

Finally, in her fourth issue, Hoffman contends that the Commonwealth failed to present sufficient evidence to sustain the conviction on the charge of recklessly endangering another person as to A.W. *See* Hoffman's Br. (as Appellant) at 14.

As noted by the trial court, Hoffman's Rule 1925(b) Statement "failed to specify the element or elements which the Commonwealth failed to prove." Trial Ct. Pa.R.A.P. 1925(a) Statement at 2 (advocating waiver of this issue); *see also* Hoffman's Pa.R.A.P. 1925(b) Statement at 1 ¶ 4.

> [W]hen challenging the sufficiency of the evidence on appeal, the [a]ppellant's [Pa.R.A.P.] 1925 statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal. Such specificity is of particular importance in cases where, as here, the [a]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

*Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.Super. 2009) (internal quotation marks and citations omitted). Accordingly, we deem this issue waived. *Id.*; *see also Commonwealth v. Williams*, 959 A.2d 1252 (Pa.Super. 2008).[8]

Based on the foregoing analysis, we affirm the order of court entered November 21, 2017, granting Hoffman judgment of acquittal on the charge of third-degree murder and aggravated assault. Regarding Hoffman's appeal, we further affirm the trial court, concluding that (1) Hoffman's merger claim is without merit; (2) her sentencing claim related to 204 Pa.Code § 303.9 is moot; (3) her allegation that the amendment to the Information was prejudicial is meritless; and (4) her sufficiency claim regarding the charge of recklessly endangering another person is waived and, further, without merit.

_____

[8] Absent waiver, we briefly note that "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. Viewed in the light most favorable to the Commonwealth, the evidence established that Hoffman consumed various sleep-aid medications in sufficient quantity that she was unable to care for a two-year-old toddler. In fact, in a drug-induced stupor, Hoffman failed to wake when she rolled off a couch onto an infant, thus causing the infant's death. In light of this evidence, the jury was free to conclude that Hoffman engaged in reckless conduct that placed or may have placed A.W. in danger of death or serious bodily injury.

This conclusion is not inconsistent with our determination that the evidence did not establish third-degree murder or aggravated assault. The *mens rea* standard for those charges is different than that applicable to reckless endangerment of another person. *Compare Packer*, 168 A.3d at 168 (discussing malice), *with Commonwealth v. Cottam*, 616 A.2d 988, 1004 (Pa.Super. 1992) ("The *mens rea* required for [reckless endangerment of another person] is a conscious disregard of a known risk of death or great bodily harm to another person.").

Nevertheless, we conclude that the trial court imposed an illegal sentence when it sentenced Hoffman to two counts of endangering the welfare of children, graded as felonies of the third degree. Accordingly, we vacate the judgment of sentence and remand for resentencing.

Appeals consolidated; order affirmed; judgment of sentence vacated; case remanded for resentencing; jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/31/2018