J-S05004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYRONE DYVON SAVAGE | : | |
| | : | |
| Appellant | : | No. 755 WDA 2018 |

Appeal from the Judgment of Sentence November 28, 2017
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0002232-2016

BEFORE: PANELLA, P.J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, P.J.: **FILED JULY 15, 2019**

Tyrone Dyvon Savage ("Appellant") appeals from the judgment of sentence entered on November 28, 2017, which followed a jury conviction on October 25, 2017, of 1 count of criminal homicide – first-degree murder, **see** 18 Pa.C.S.A. §§ 2501(a), 2502(a), and 1 count of receiving stolen property, **see** 18 Pa.C.S.A. § 3925(a). We affirm.

The trial court summarized the facts of this case as follows:

On October 7, 2016 Travonte Sligh hosted "a little get together" at his home in Morado Dwelling, Beaver Falls. Present were the Appellant, Mr. Simmons, and numerous other persons. Later in the evening Mr. Sligh was inside his apartment when he heard an argument followed by a gunshot; he went outside and saw that Simmons had been shot.

Nicole Koch, Appellant's girlfriend, drove Appellant and their son to Mr. Sligh's house for this "cookout" at approximately 4:00 or 5:00 p.m. Ms. Koch waited about an hour, until 8:30 or 9:00 p.m. for Appellant to return; when he did not she left without him.

_____

* Retired Senior Judge assigned to the Superior Court.

Juanita Ochieng drove Marquis Kuzbicki and Simmons to Morado Dwellings on the day at issue; she was driving there to visit a friend. Later that evening, as Ms. Ochieng was leaving she drove to where Mr. Kuzbicki, Simmons, and unknown other persons were standing. She observed Mr. [Kuzbicki] and Simmons arguing and pushing one another. She heard Simmons say "I don't care. I'll die for mine;" she then heard a gunshot and drove away. Ms. Ochieng did not view the gunshot or the shooter and did not know who was shot until a later time.

Halea West was 13 years of age at the time she testified at trial. Ms. West saw Appellant, who she knew as "Trigga", at her neighbor's gathering on October 7, 2016. Later that evening Ms. West was in her bedroom when she heard arguing and then two gunshots; she looked outside and saw Appellant shoot someone. She observed Appellant run across her yard and towards the "center" of Morado Dwellings. Appellant was wearing a black shirt and gray sweatpants. Upon cross-examination Ms. West acknowledged that she had twice testified regarding this case and on those occasions denied having seen that actual shooting.

At the time of the incident, William Phillips was working at PTC Alliance, a steel tubing plant, when he heard a gunshot. About five minutes later he observed a black male walking quickly towards him; the man told Mr. Phillips that he had been shot but would not stop for help. Mr. Phillips then called 911. Mr. Phillips was not able to identify the individual he saw that night.

Captain Curt Couper responded to the shooting in Morado Dwellings. While he was at the scene he received information from the County Dispatch regarding the 911 call made from PTC Alliance regarding the individual claiming to have been shot. He drove around the surrounding areas and observed Appellant playing basketball with two other persons. When Captain Couper began driving towards the three, Appellant stopped playing basketball and walked toward Captain Couper's vehicle. At this time Appellant was wearing a black shirt and gray shorts. Captain Couper observed that Appellant had blood on his hand, scratches and cuts on his legs, and grass and twigs in his hair. He arrested Appellant and transported him to the Beaver Falls Police Station.

William Pignanelli and Nathan Hess were playing basketball outside Mr. Hess's home near the PTC Alliance plant when

Appellant approached and asked if he could play. Appellant played with them for ten to twenty minutes and left.

Sergeant Cipriani was one of many officers responding to the scene of the homicide. One live round of ammunition and one spent shell casing were found nearby.

Detective Burau searched for evidence in the area of PTC Alliance; he located a pair of "blackish gray" sweatpants hanging on a barbed wire fence.

Detective Staub performed a gunshot residue test upon Appellant, taking samples from the back and palms of both Appellant's hand. Several months later Detective Staub performed the same testing upon articles of clothing found in this investigation.

Brad Scassa is the environmental health and safety manager at PTC Alliance. When he arrived at work on Monday October 10, 2016, he learned of what had happened three days prior. He was instructed to walk the perimeter and check the fencing to see if there were any points of easy access; while doing so he found three live bullets and a handgun magazine. Mr. Scassa led police officers to the items and then assisted in reviewing the plant's security footage. This footage showed an individual wearing a black shirt crawling under a fence and possibly disposing of an item in the cooling tower.

Captain Chichy, Detective Siget, and other officers retrieved the bullets and magazine from PTC Alliance, watched the security camera footage and then searched the area of the cooling tower, where they found a black shirt. The security footage also revealed an individual wearing a black shirt appear to take off or fiddle with his pants, and later appear to be carrying a pair of pants in his hand.

Christopher Ceriana, of the Beaver Falls Fire Department, used scuba equipment to search inside the cooling tower, finding a Springfield .40 caliber handgun.

Xzavier Coleman testified that his Springield (sic) XD .40 caliber handgun, serial number XD312698, was stolen from his vehicle in August of 2016. This was the same handgun found in the cooling tower.

Through various expert witnesses the Commonwealth was able to establish the following:

- The sweatpants found at PTC Alliance contained Appellant's DNA;

- The shirt found at PTC Alliance contained Appellant's DNA;

- The shell casing found at the scene had been discharged from the firearm found in the cooling tower at PTC Alliance;

- The back of Appellant's hands contained gunshot residue; the palms of his hands were "indicative" of gunshot residue;

- The shirt Appellant was wearing when arrested and the shirt and sweatpants found at PTC Alliance contained gunshot residue or were "indicative" of gunshot residue.

To summarize, Appellant shot Simmons in the chest, fled from the scene to PTC Alliance, where security footage revealed a man in a black shirt matching Appellant's description crawling under the fence, Appellant then dropped the magazine from a Springfield .40 caliber handgun and 3 live rounds near the fence, discarded certain items of clothing and the firearm in the cooling tower, and was arrested nearby shortly thereafter. DNA evidence shows that the abandoned clothing was Appellant's and the gunshot residue test indicates that he fired a gun.

Trial Court Opinion, 7/27/18, at 3-8 (citations to the record omitted).

On November 28, 2017, Appellant was sentenced to lifelong incarceration for the first-degree murder offense and a concurrent sentence of two to ten years of incarceration for receiving stolen property. Appellant filed timely post-sentence motions and later filed supplemental post-sentence motions. The trial court denied these motions, and Appellant filed this timely appeal.

Appellant presents two questions for our review:

1. Was the verdict against the weight of the evidence, because witness Haela West identified Appellant as the shooter when she testified during trial, but she did not identify Appellant at all prior proceedings? West's trial testimony was not credible, and Appellant's conviction for homicide in reliance on that incredible testimony is a miscarriage of justice.

2. Was the conviction for first-degree murder supported by sufficient evidence, where no credible witness identified Appellant as the individual who shot the victim, and the Commonwealth failed to establish that element of the crime?

*See* Appellant's Brief, at 6.

As to Appellant's first issue, a weight of the evidence challenge "concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Rayner*, 153 A.3d 1049, 1054 (Pa. Super. 2016) (citation omitted). Our standard of review for a claim that the verdict was against the weight of the evidence is as follows:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of a trial judge is to determine that not withstanding the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion*, *not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations and quotation marks omitted) (emphasis in original). "Discretion is abused where the course pursued [by the trial court] represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." ***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000).

Appellant contends that the witness who identified him at trial was unreliable. ***See*** Appellant's Brief, at 17. Appellant's argument is as follows:

> [Appellant] asked the trial court to consider the fact that the only witness to identify [Appellant] as the shooter was the witness [named] West. No other witness identified [Appellant] as the actual shooter. The impact of West's testimony, therefore, was critical to the prosecution's case. [Appellant] argues that West's testimony was so unreliable that a verdict relying on her testimony is a total miscarriage of justice.

- 6 -

*Id*., at 18. "Any uncertainty in an eyewitness's identification of a defendant is a question of the weight of the evidence, not its sufficiency." ***Commonwealth v. Cain***, 906 A.2d 1242, 1245 (Pa. Super. 2006).

As stated in the trial court's summary of the case, at trial, "Ms. West acknowledged that she had twice testified regarding this case and on those occasions denied having seen [the] actual shooting." Trial Court Opinion, 7/27/18, at 4. Appellant indicates that "the first time West claimed to have [witnessed] the shooting was approximately one week before the trial." Appellant's Brief, at 19. Appellant identifies many inconsistencies between West's prior testimony and her testimony at trial: West's prior testimony as to who was present at or around the scene of the crime and her familiarity with those individuals; her recollection of the specific clothing worn by and nickname of the shooter; the pathway taken by the shooter after the incident; and her positioning in and location of her bedroom window concurrent with the shooting were all dissimilar to what West testified to at trial. ***See id.***, at 19-20. Moreover, West oscillated on whether and when she had spoken to police on the night of the shooting. ***See id***.

Appellant argues that since West's testimony changed every time she testified and "no other witness identified [Appellant] as the perpetrator," "[i]t shocks all sense of justice" for the Appellant to have been convicted under these circumstances. Appellant's Brief, at 22. Appellant attempts to

distinguish *Commonwealth v. Rodriguez,* 174 A.3d 1130, 1140 (Pa. Super. 2017), from the facts of this case.

In *Rodriguez*, we unequivocally disapproved of the premise that "a jury's verdict of guilty, which is based upon the testimony of a single eyewitness, is inherently suspicious or unreliable." *Rodriguez*, 174 A.3d at 1140. "Rather, as with all testimony and evidence offered at trial, in passing upon the credibility of a single eyewitness, the jury is free to believe all, part, or none of the witness's testimony." *Id*. The key witness in *Rodriguez* was the only individual that "saw the shooting and could provide a description of the shooter." *Id*., at 1134. However, "the jury was presented with direct and circumstantial evidence of [a]ppellant's guilt beyond that presented by [the key witness], i.e., [additional testimony] and DNA evidence left at the scene." *Id*., at 1140.

In this matter, West was rigorously cross-examined in front of the jury by Appellant's counsel. *See* N.T., 10/18/17, 59-87, 102-05. On at least seven different occasions, Appellant's counsel attempted to, or in fact did, illuminate discrepancies between West's prior testimony and her testimony at trial. *See, e.g.*, *id*., at 66-69 (identifying inconsistencies in her description of the clothing the shooter was wearing); *id*., at 70-71 (recognizing conflict in whether she saw the path of the shooter after the incident); *id*., at 71-75 (demonstrating that her earlier testimony conveyed that she had not seen the shooting).

On redirect examination, West acknowledged that she was scared when she testified previously and gave statements to the police. *See id*., at 88, 96. Moreover, as time progressed, she stated that she recognized things differently at the time of trial and now felt more comfortable reporting on what she had witnessed. *See id*., at 89, 96. When it came to actually identifying Appellant, when asked "did you see Trigga, the Defendant, Tyrone Savage, shoot Justice Simmons on October 7th, 2016?" West responded "Yes." *Id*., at 102.

West's testimony at trial is not the only evidence of record tending to incriminate Appellant. In addition to the physical evidence recovered[1], at least five witnesses corroborated various aspects of West's account. *See, e.g.*, *id*., at 165-69 (one witness, working close to the shooting at PTC Alliance describing hearing a gunshot and then observing an African-American male walk close by); *id*., 10/19/17, at 38-41 (another witness, near PTC Alliance, indicating that Appellant approached him to play basketball on the day in question); *id*., 10/17/17, at 129, 136-37 (a third witness identifying that he had heard an argument and stated that Appellant carries a gun). Even though

_____

[1] Appellant's DNA was found on sweatpants and a shirt recovered on the grounds of PTC Alliance, a steel tubing plant. *See* N.T., 10/23/17, at 19, 24. Furthermore, Appellant's hands, the shirt he was wearing when arrested, and the aforementioned shirt and sweatpants were all tested and found to be "indicative" of gunshot residue. *See id*., at 102-110. The firearm found at PTC Alliance fired the shell casing found at the site of the shooting. *See id*., at 70, 85-86.

these testimonial corroborations were circumstantial in nature, "the Commonwealth can prove its case by circumstantial evidence." *Commonwealth v. Haynes*, 116 A.3d 640, 657 (Pa. Super. 2015).

Upon consideration of the evidence presented, we cannot conclude the trial court abused its discretion in finding that the jury's verdict did not shock its conscience. As such, the trial court did not abuse its discretion in denying Appellant's request for a new trial. We once again affirm the principle that as credibility determinations are within the exclusive province of the jury, "[t]he jury is free to believe all, part or none of the evidence introduced at trial." *Commonwealth v. Hoffman*, 198 A.3d 1112, 1118 (Pa. Super. 2018) (citation omitted). Here, while it was permitted to reach the opposite conclusion especially in light of the extensive cross-examination that was performed, the jury implicitly found West's testimony at trial to be credible. Thus, a guilty jury verdict was not against the weight of the evidence.

Appellant next contends that his conviction for first-degree murder was not supported by sufficient evidence. Appellant bolsters this assertion by, again, attacking the "unreliable eyewitness testimony of West." Appellant's Brief, at 24. Essentially, Appellant wholly eliminates West's testimony and attempts to reconstruct the case against him as if West's testimony did not exist. *See id*., at 26. Absent this identification testimony, Appellant states, even in light of all the aforesaid physical and testimonial evidence, there is insufficient evidence to convict Appellant. *See id*.

Appellant's sufficiency argument, requesting certain components of the trial testimony to be stricken, would require us to review a diminished record. That is something we cannot do. ***See Commonwealth v. Gray***, 867 A.2d 560, 567 (Pa. Super. 2005) (identifying that we do not review a diminished record when evaluating the sufficiency of the evidence and additionally, "the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct"). Therefore, in this domain, we are prohibited from disregarding the existence of West's testimony. Furthermore, as quoted, *supra*, "any uncertainty in an eyewitness's identification of a defendant is a question of the weight of the evidence, not its sufficiency." ***Commonwealth v. Cain***, 906 A.2d 1242, 1245 (Pa. Super. 2006). Appellant, in his attempt to either eliminate or cast doubt on eyewitness testimony in this case, has failed to develop a proper sufficiency of the evidence argument. Thus, he has waived this issue. ***See Commonwealth v. Knox***, 50 A.3d 732, 748 (Pa. Super. 2012) (failure to provide the Court with pertinent discussion of the issue and citations to relevant authority results in the waiver of that issue).

After giving thoughtful review, we conclude that neither of Appellant's issues has merit. Accordingly, the judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/15/2019