J-A18026-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANKLIN T. ELLIS, JR | : | No. 183 WDA 2019 |

Appeal from the Order Entered January 8, 2019
In the Court of Common Pleas of Indiana County Criminal Division at
No(s):  CP-32-CR-0000863-2017

BEFORE:  BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                    FILED MAY 19, 2020

The Commonwealth appeals from the order granting Appellee Franklin

T. Ellis, Jr.'s post-sentence motion for judgment of acquittal after a jury

convicted him of possession of a controlled substance and conspiracy to

deliver.[1]   The Commonwealth argues that the evidence was sufficient to

establish the elements of both offenses.  We affirm in part, vacate in part, and

remand the matter for proceedings consistent with this memorandum.

The trial court summarized the relevant facts of this case as follows:

> The charges against [Appellee] arose from events on the evening
> of December 30, 2015, when the Pennsylvania State Police
> conducted a controlled buy of heroin from an individual with an
> outstanding arrest warrant, Alex Huber (Huber).  The controlled
> buy occurred at a bus garage, where a confidential informant

_____

[1] 35 Pa.C.S. § 780-113(a)(16) and 18 Pa.C.S. § 903, respectively.

[(CI)] purchased $100.00 of heroin[2] from Huber with marked bills. After the transaction, the informant told police that he had followed Huber and observed him entering a room at the nearby Twin Pines Motel. Upon approaching the motel, Pennsylvania State Police Corporal Brennan Herr was able to observe Huber inside a room through a small opening in the curtains. Corporal Herr knocked and announced the presence of state police with a warrant for Huber, and ordered him to open the door. Rather than opening the door, Huber latched it from inside,[3] after which Corporal Herr stated he would kick the door in if it was not opened. When the door was not opened after this second command, Corporal Herr kicked it in and entered the room.

Upon gaining access to the room, Corporal Herr could observe [Appellee standing[4]] at a desk, although his view of [Appellee]'s hands was partially obstructed by a large entertainment center. Both Huber and [Appellee] were ordered to the ground; Huber immediately complied, but [Appellee] did not. After failing to comply a second time, [Appellee] was tased and taken into

_____

[2] The criminal information indicated that Huber sold .19 grams of heroin to the CI.

[3] At trial, Corporal Herr testified that when he first approached the hotel room, he saw Huber "sitting on the edge of the bed" through an opening in the curtains. See N.T. Trial at at 26, 38. After Corporal Herr announced that he had an arrest warrant for Huber and instructed him to open the door, he heard the door lock. Id. at 34. When he entered the motel room seconds later, Corporal Herr observed Huber sitting on a chair that was "a couple feet" to the immediate left of the door and directly next to the bed. Id. at 34-35. At that time, Appellee was located in the opposite corner of the room standing at a desk, which was on the other side of an entertainment console and approximately ten feet away from Corporal Herr. Id. at 27-28. Based on these observations, Corporal Herr testified that although he could not say "exactly what happened" in the room, he was "assuming [Huber] locked the door and sat down on the chair." Id. at 38.

[4] For purposes of clarity, we note that although the trial court stated that Appellee was sitting at the desk, Corporal Herr testified that Appellee was standing at the desk when police entered the room. See N.T. Trial, 1/25/18, at 27.

custody. [Appellee] was found to have $856.00 in cash in his pocket while Huber was found with $80.00 of the marked bills from the controlled buy. The remaining $20.00 of buy money was located after a later search of the room,[5,6] and a pipe and two stamp bags of heroin[7] were located on the desk where [Appellee had been standing]. At the time of his arrest [Appellee] did not have any controlled substances or any of the buy money on his person. The motel room had not been rented by either Huber or [Appellee], but by another individual who returned after the police gained entry.

Trial Ct. Op., 1/8/19, at 2.

The Commonwealth filed a criminal information charging Appellee with possession with intent to deliver (PWID), criminal use of a communication facility,[8] possession, and conspiracy to deliver. On November 8, 2017, Appellee filed a motion in limine seeking to exclude text messages from the cell phone that police found in the motel room. Following a hearing on January 17, 2018, the trial court granted Appellee's motion.

_____

[5] Although Huber only had $80 of the buy money on his person, Trooper Evans indicated that the remaining $20 was recovered from the floor in the area near Huber. See N.T. Trial at 59.

[6] Police recovered two cell phones that were registered to Huber. They also found an additional cell phone that contained incoming messages, but had no record of any outgoing messages. Police believed that the phone belonged to Appellee.

[7] The criminal information stated that the stamp bags contained .04 grams of heroin.

[8] 35 Pa.C.S. § 780-113 (a)(30) and 18 Pa.C.S. § 7512(a).

On January 25, 2018, Appellee proceeded to a jury trial. At the conclusion of testimony, Appellee requested a judgment for acquittal on the charges of PWID, conspiracy, and criminal use of a communication facility. See N.T. Trial, 1/25/18, at 68. The trial court granted Appellee's motion as to PWID and criminal use of a communication facility,[9] but denied relief on the conspiracy charge. Id. at 73-75. That same day, the jury found Appellee guilty of possession and conspiracy. On April 13, 2018, the trial court sentenced Appellee to an aggregate term of two to ten years' incarceration.[10]

On June 11, 2018, the trial court docketed Appellee's untimely pro se notice of appeal and request for appointed counsel. On June 13, 2018, the trial court ordered counsel to continue representing Appellee on appeal and to file a Pa.R.A.P. 1925(b) statement on Appellee's behalf. See Order, 6/13/18. The trial court explained that "if counsel, after consultation with [Appellee], determines that a challenge to the sufficiency of the evidence is to be raised, issues which must first be raised with the trial court, the court will grant a motion to file a post-sentence motion nunc pro tunc." Id. (some formatting

_____

[9] As to PWID, the trial court concluded that there was insufficient evidence to establish that the substance from the controlled buy was heroin, as it was "not part of the lab report." See N.T. Trial at 74. With respect to criminal use of a communication facility, the trial court stated that "the only evidence we have is that there were text messages and phone calls between the [CI] and Huber. There is no evidence that [Appellee] was involved in or was the one making or receiving those calls." Id.

[10] The certified record does not contain a transcript from the sentencing hearing.

altered). However, the trial court indicated that "[t]o do so, the appeal pending with the Superior Court would have to be withdrawn." Id.

On July 2, 2018, Appellee filed a petition for leave to file a direct appeal nunc pro tunc. He also filed a Rule 1925(b) statement and a motion to withdraw his pro se notice of appeal. The trial court scheduled a hearing for July 31, 2018.

On July 31, 2018, the trial court conducted a hearing at which Appellant, trial counsel, and the Commonwealth appeared.[11] On August 7, 2018, the trial court ordered Appellee to withdraw his June 11, 2018 pro se notice of appeal with this Court. See Order, 8/7/18. The trial court also instructed Appellee to file a post-sentence motion nunc pro tunc on or before August 17, 2018, and scheduled a hearing for September 13, 2018.[12] Id. The trial court did not provide a deadline for Appellee to file a direct appeal.

On August 17, 2018, Appellee filed a motion to withdraw his pro se notice of appeal. On September 11, 2018, Appellee filed a post-sentence motion for judgment of acquittal in which he challenged both the sufficiency and the weight of the evidence.

_____

[11] The certified record does not contain a transcript of this hearing.

[12] The certified record does not contain a transcript of this hearing.

On January 8, 2019, the trial court granted Appellee's post-sentence motion and issued a memorandum explaining its decision.[13] See Trial Ct. Op. and Order, 1/8/19. On January 24, 2019, the Commonwealth filed a notice of appeal. The Commonwealth also filed a timely court-ordered Pa.R.A.P. 1925(b) statement. On February 19, 2019, the trial court issued an order adopting its January 8, 2019 opinion and order as its Rule 1925(a) opinion.

The Commonwealth raises the following issues, which we have reordered for purposes of this appeal:

> [1.] Whether the trial court erred in law and/or abused its discretion in granting Appellee's post-sentence motion where, in viewing the evidence in a light most favorable to the Commonwealth as the verdict winner, sufficient evidence was presented during the Appellee's jury trial to support the jury's guilty verdict of possession of a controlled substance?
>
> [2.] Whether the trial court erred in law and/or abused its discretion in granting Appellee's post-sentence motion where, in viewing the evidence in a light most favorable to the Commonwealth as verdict winner, sufficient evidence was presented during the Appellee's jury trial to support the jury's guilty verdict of conspiracy to delivery of a controlled substance?

Commonwealth's Brief at 7.

First, with respect to the possession charge, the Commonwealth argues that "the record clearly supports a finding that [Appellee] had the power to

_____

[13] The trial court did not address whether Appellee timely filed his post-sentence motion nunc pro tunc following the trial court's August 7, 2018 order. Nonetheless, the trial court accepted Appellee's September 11, 2018 post-sentence motion nunc pro tunc as timely, and neither party disputes that ruling.

control the contraband" which was "openly displayed on a desktop within feet from Appellee." Id. at 38-39. The Commonwealth refers to Corporal Herr's testimony that after police entered the motel room, Appellee "continued to move his hands in the vicinity of where the drugs were located despite clear commands to desist." Id. at 40. Therefore, the Commonwealth contends that there was sufficient evidence to establish that Appellee constructively possessed heroin. Id. at 39-40.

Appellee responds that police "never observed Appellee physically touching heroin and did not believe Appellee to be under the influence of heroin." Appellee's Brief at 9. Appellee asserts that his "mere presence in a room rented by a third party without more is insufficient to prove beyond a reasonable doubt that he possessed heroin found within that room." Id.

Our well-settled standard of review is as follows:

> In passing upon a post-verdict motion for judgment of acquittal, a trial court is limited to determining the presence or absence of that quantum of evidence necessary to establish the elements of the crime. To determine the legal sufficiency of evidence supporting a jury's verdict of guilty, this Court must view the evidence in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. We then determine whether the evidence is sufficient to permit a jury to determine that each and every element of the crimes charged has been established beyond a reasonable doubt. It is the function of the jury to pass upon the credibility of the witnesses and to determine the weight to be accorded the evidence produced. The jury is free to believe all, part or none of the evidence introduced at trial. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the jury unless the evidence be so weak and

inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

Commonwealth v. Hoffman, 198 A.3d 1112, 1118 (Pa. Super. 2018) (citation omitted).

In drug possession cases, the Commonwealth must prove that a defendant knowingly or intentionally possessed a controlled substance. See 35 P.S. § 780-113(a)(16). Possession can be established by "proving actual possession, constructive possession, or joint constructive possession." Commonwealth v. Parrish, 191 A.3d 31, 36 (Pa. Super. 2018) (citation omitted) appeal denied, 202 A.3d 42 (Pa. 2019).

> Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

Id. at 36-37 (citations, brackets, and quotation marks omitted).

"[T]he power and intent to control the contraband does not need to be exclusive to the defendant," as "constructive possession may be found in one or more actors where the item [at] issue is in an area of joint control and

equal access." Commonwealth v. Vargas, 108 A.3d 858, 868 (Pa. Super. 2014) (citation omitted). "Nevertheless, where more than one person has equal access to where drugs are stored, presence alone in conjunction with such access will not prove conscious dominion over the contraband." Id. (citation and quotation marks omitted).

> For the Commonwealth to prove constructive possession where more than one person has access to the contraband, the Commonwealth must introduce evidence demonstrating either [the defendant's] participation in the drug related activity or evidence connecting [the defendant] to the specific room or areas where the drugs were kept. However, an intent to maintain a conscious dominion may be inferred from the totality of the circumstances . . . . [and] circumstantial evidence may be used to establish a defendant's possession of drugs or contraband.

Id. (citation and quotation marks omitted).

Here, the trial court evaluated the Commonwealth's evidence for the possession charge as follows:

> In the instant matter, the two stamp bags of heroin at issue were on a desk in an area that both Huber and [Appellee] had access to; however, beyond that, no evidence exists that [Appellee] participated in any drug related activity or was connected to that specific area. There is no evidence that [Appellee] was involved in the packaging or sale of the heroin, or that [Appellee] was under the influence of heroin. Furthermore, other than his mere presence, nothing connects [Appellee] to the motel room, which was rented to a third individual who was absent when the police arrived. For these reasons, there is insufficient evidence to establish that [Appellee] was in possession of the heroin in the motel room.

Trial Ct. Op. at 6-7.

Based on our review of the record, we disagree with the trial court's conclusion that Appellee's presence in the motel room was the only evidence connecting him to the heroin. At trial, Corporal Herr testified that after he entered the motel room, he observed Appellee standing at a desk. See N.T. Trial at 27. Corporal Herr ordered Appellee to get on the ground, but Appellee "continued to mess around" with items on the desk. Id. at 28. After Corporal Herr fired his taser at Appellee and placed him under arrest, police recovered two stamp bags of heroin from the desk where Appellee had been standing. Id. at 30. Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, there was sufficient evidence for the jury to find that Appellee constructively possessed the heroin.[14] See Hoffman, 198 A.3d at 1119, see also Vargas, 108 A.3d at 868. Accordingly, we are constrained to reverse the trial court's judgment of acquittal and reinstate the jury's guilty verdict for the possession charge. Hoffman, 198 A.3d at 1119.

Next, the Commonwealth argues that there was sufficient evidence to support Appellee's conviction for conspiracy to deliver. Commonwealth's Brief at 25. Relying on Commonwealth v. McCall, 911 A.2d 992 (Pa. Super. 2006), the Commonwealth asserts that although Appellee "did not physically handle the drugs transacted during the controlled buy, he clearly took an

_____

[14] Further, the fact that Huber was present in the room, or that a third party rented the room, does not compel a different result. See Commonwealth v. Hall, 199 A.3d 954, 962 (Pa. Super. 2018) (stating that the Commonwealth does not "have to disprove others' constructive possession of the contraband, or establish which of the others was in joint possession, in order to present legally sufficient evidence" of a defendant's constructive possession).

active role in the illicit transaction." Id. at 35. The Commonwealth argues that there was sufficient evidence to demonstrate "an association between Appellee and Huber as the alleged conspirators due to their close proximity and having been discovered in the open motel room together just minutes after Huber engaged in a controlled buy." Id. at 31. The Commonwealth points to evidence that (1) although Huber had $80 of the buy money, the remaining $20 was on the floor of the motel room where Appellee was arrested; (2) Appellee had $856 in small denominations, which is consistent with drug sale proceeds; and (3) while the motel room was registered to another individual, both Huber and Appellee were in the room immediately after the drug transaction, suggesting that they had independent access to the room. Id. at 32.

Appellee responds that he "merely existed in a motel room that Huber traveled to after a drug transaction." Appellee's Brief at 15-16. He argues that there was no evidence that he knew about the drug buy or that he was in communication with Huber before it occurred. Id. at 13-14. Further, Appellee states that although Trooper Evans testified that a "prerecorded twenty [] dollar bill used in the controlled buy was in the motel room, he could not testify as to its proximity to [Appellee]. All of the remaining buy money, eighty [] dollars, was found on Huber's person." Id. at 13. Therefore, he asserts that there was insufficient evidence to support his conspiracy conviction. Id. at 17.

"To sustain a conviction for [PWID], the Commonwealth must establish the defendant knowingly or intentionally possessed a controlled substance without being properly registered to do so, with the intent to . . . deliver it." Commonwealth v. Dix, 207 A.3d 383, 390 (Pa. Super. 2019) (citations omitted).

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." Commonwealth v. Melvin, 103 A.3d 1, 42 (Pa. Super. 2014) (citation omitted). "Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." Commonwealth v. Barnes, 871 A.2d 812, 820 (Pa. Super. 2005) (citation omitted).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

Melvin, 103 A.3d at 42-43 (citation omitted).

In McCall, the defendant was convicted of PWID and conspiracy to deliver based on his involvement in four drug transactions conducted by his co-defendant. McCall, 911 A.2d at 992. On appeal, the defendant argued that there was no evidence that he directly participated in the drug sales. Id. at 997. This Court explained that although the defendant "did not physically handle the drugs transacted" by his co-defendant, he "clearly took an active role in the illicit enterprise." Id. at 997. Specifically, the Court explained:

> [The defendant] was observed working as a lookout . . . during three of the transactions in question, and he received money from his cohort seller immediately after two sales. Indeed, when arrested, [the defendant] possessed a copious amount of money ($1,508) in small denominations consistent with drug sale proceeds, while, in comparison, the seller possessed only $64.
>
> In contrast to the passive bystander or acquaintance merely present at the scene of a crime, roles which will not sustain a conviction for conspiracy, [the defendant] actively participated in several crucial respects to enable his cohort to sell crack cocaine to numerous buyers. It was thus appropriate for the fact-finder to infer an agreement between [the defendant] and his cohort to deliver crack cocaine based upon [the defendant's] participation in the enterprise carrying out the deliveries.

Id.

Here, the trial court addressed the Commonwealth's evidence for conspiracy to deliver as follows:

> To sustain [Appellee]'s conspiracy conviction it must be proven beyond a reasonable doubt that [Appellee] had an agreement with Huber to deliver heroin; that [Appellee] and Huber had a shared criminal intent to facilitate the delivery of heroin; and that either [Appellee] or Huber engaged in an overt act in furtherance of delivering heroin. Here, the overt act, as alleged by the

Information, is Huber's delivery of heroin to the [(CI)], but there is no evidence that [Appellee] had an agreement with Huber or that the two shared any criminal intent. [Appellee] was not present at the controlled buy, and there is no evidence as to [Appellee]'s whereabouts prior to or during that time. The only evidence of [Appellee]'s location was his presence in a motel room rented by a third party when the police served their warrant on Huber. Furthermore, none of the buy money or illegal substances were found on [Appellee]'s person.

The [trial c]ourt recognizes that conspiracy can be proven by circumstantial evidence, such as the circumstances and conduct of the parties surrounding a criminal episode, however, the evidence concerning [Appellee]'s involvement fails to rise to this level. [Appellee]'s mere association with Huber at the motel and [Appellee] having a significant amount of cash in his pocket are factors to be considered among all the circumstances, however, with nothing more, are insufficient to prove an agreement to commit an unlawful act. Accordingly, the elements for a conviction of conspiracy to delivery of a controlled substance have not been satisfied, and this charge must be dismissed.

Trial Ct. Op. at 5 (some formatting altered).

Based on our review of the record, and viewing the evidence in the light most favorable to the Commonwealth, we agree with the trial court that there was insufficient evidence to support Appellee's conviction for conspiracy to deliver. See Hoffman, 198 A.3d 1119; see also Melvin, 103 A.3d at 43. Here, unlike in McCall, the evidence did not establish that Appellee participated in any aspect of Huber's transaction with the CI.[15] See McCall, 911 A.2d at 997. There was no evidence that Appellee served as a lookout

_____

[15] We note that Appellee's possession charge was based on the two stamp bags of heroin recovered from the motel room, not the heroin used in the controlled-buy operation.

during the drug transaction, or that he communicated with Huber prior to or during the sale. Huber conducted the sale at a bus garage and then went back to the motel room. After the police entered the motel room to arrest Huber, they encountered Appellee, for the first time.[16]

Although Appellee had a large amount of cash in small denominations, he did not have any of the buy money. The evidence established that Huber had $80 of the buy money and the remaining $20 was recovered from the motel room floor. See Commonwealth v. Ocasio, 619 A.2d 352, 355 (Pa. Super. 1993) (stating that the defendant's "possession of a large sum of money in small denominations, without more, does not prove that [he] was involved in drug sales").

Finally, although Appellee constructively possessed two stamp bags of heroin, this fact does not establish his participation in the conspiracy. There

_____

[16] The concurring and dissenting memorandum states that the Commonwealth relied on four facts to establish Appellee's participation in the conspiracy, including that "Appellee locked the hotel room door rather than comply with police directives to open it" and that "Huber was not in possession of all of the proceeds from the sale to the CI." See Concurring and Dissenting Mem. at 2. However, neither of these assertions are supported by the record. Even viewing the record in a light most favorable to the Commonwealth, the Commonwealth's evidence did not support the inference that Appellee locked the motel room door. See N.T. Trial at 26-35 (Corporal Herr testified that he saw Huber near the motel room door before and after he heard the door lock; at that time, Appellee was at a desk on the opposite side of the room, approximately ten feet away). Further, the Commonwealth's own witness testified that Huber did have possession over all of the buy money. See id. at 59 (Trooper Evans testified that although $20 of the buy money was on the floor, it was recovered from the area near Huber).

was no evidence linking the two stamp bags of heroin to Huber or the controlled buy. Further, Trooper Evans testified that during the search of the motel room, police also recovered "a glass pipe commonly used for smoking." See N.T. Trial at 51; cf. Commonwealth v. Jones, 874 A.2d 108, 121 (Pa. Super. 2005) (stating that "surrounding circumstances, such as lack of paraphernalia for consumption" may establish that a defendant's intent to deliver a controlled substance).

Therefore, we agree with the trial court that, as a matter of law, the evidence was insufficient to support Appellee's conspiracy conviction. See McCall, 911 A.2d at 997; Melvin, 103 A.3d at 42. Accordingly, the Commonwealth is not entitled to relief on this issue.

In sum, we conclude that the Commonwealth presented sufficient evidence to sustain the jury's guilty verdict for possession of a controlled substance. Accordingly, we must reverse the judgment of acquittal as to possession and reinstate the jury's guilty verdict on that charge and remand the matter for resentencing. However, we affirm the trial court's judgment of acquittal for conspiracy to deliver.

Order affirmed in part and vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Musmanno joins the memorandum.

Judge Bowes files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/19/2020</u>