J-A09035-20

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KAREEM SAVAGE, | : | |
| | : | |
| Appellant | : | No. 787 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 17, 2019
in the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0000154-2018

BEFORE:  SHOGAN, J., MURRAY, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          FILED SEPTEMBER 18, 2020

Kareem Savage (Appellant) appeals from the April 17, 2019 aggregate judgment of sentence of life imprisonment after a jury found him guilty of one count each of assault by life prisoner, assault by prisoner, aggravated assault, and third-degree murder.  Upon review, we affirm.

We glean the following from the record.  On September 1, 2016, Appellant was serving a life sentence at SCI Albion in the Delta Alpha housing unit.  Anthony Wilson (Victim) was also an inmate in that unit.  At approximately 3:25 p.m., after inmates began coming into the day room from the outdoor recreation area, corrections officer Ethan Smith heard a commotion and observed several inmates fighting.  Officer Smith reported the fight on the prison radio system and began to lock down the area.

_____
* Retired Senior Judge assigned to the Superior Court.

Corrections officer Keith Conley entered the day room within seconds of the radio call and ordered the inmates to return to their respective cells. As the group returned to their cells, two inmates remained prone on the ground: Rosco Brown and Victim. Victim was unresponsive. Once the area was secured, Victim was transported to the hospital.

A surveillance camera captured the prison fight.[1] The camera was programmed to pan continuously across the Delta Alpha housing block. As it panned, it captured part of the altercation before panning past the day room. Within seconds, the radio call alerted the control room to take manual control of the camera, and the operator refocused the camera directly on the fight.

Based on the prison investigation, prison officials believed that George Spoonhour initially knocked Victim to the ground before joining in a separate altercation with Shanne Jones-Coleman and Antwan Sheppard against Brown. After Spoonhour knocked Victim onto the ground, Appellant was identified on the surveillance video punching Victim and, once Victim was prone and unresponsive, stomping repeatedly on Victim's face with his prison-issued boots.

---

[1] Two videos were introduced at Appellant's jury trial. The first video (Exhibit 2-A) captured the altercation and some of the aftermath; the second video (Exhibit 2-B) was a sequential continuation of what was captured in the first video, showing the aftermath of the altercation and Appellant returning to his cell. See N.T., 2/12/2019, at 58-59 (explaining the relationship between the two videos).

At the hospital, Victim was diagnosed with a nasal fracture, a tear above his right eyebrow, swelling of the brain, and blood on his brain, which caused his brain to shift to the side. He remained in a persistent vegetative state, requiring continuous mechanical ventilation to breathe. Over the next couple months, Victim was transported multiple times between skilled nursing facilities and hospitals due to blood infections and severe pneumonia resulting from the continuous ventilation. On November 21, 2016, Victim's family decided to cease medical care and begin comfort care. Victim was placed on a morphine drip the following day. Victim passed away on December 6, 2016.

As a result of the foregoing, Appellant was charged with one count each of assault by life prisoner, assault by prisoner, aggravated assault, and criminal homicide. Appellant proceeded to a jury trial on February 12-13, 2019. At trial, the Commonwealth introduced, inter alia, forensic autopsy reports from Dr. Ashley Zezulak and Dr. Lauren Huddle, DNA evidence, and the surveillance videos.

Dr. Zezulak performed Victim's autopsy, and concluded that Victim's cause of death was acute morphine overdose based on the level of morphine found in Victim's toxicology screen. Victim's death certificate stated that the cause of death was morphine toxicity, which was due to multi-organ failure, which was due to long-term intubation and being in a vegetative state, which was due to head trauma from the prison altercation.

At trial,[2] Dr. Huddle testified that Victim had been on a morphine drip for two weeks prior to his death. Dr. Huddle noted that his morphine level was within the therapeutic range, and Victim's genotype contained an indicator that Victim may have required higher doses of morphine for adequate pain control. Based on the foregoing, Dr. Huddle did not agree with Dr. Zezulak that a morphine overdose was the cause of Victim's death. Rather, based on her investigation, Dr. Huddle concluded that Victim's cause of death was "bilateral acute and bronchial pneumonia … due to complications of blunt force trauma of the head." N.T., 2/12/2019, at 210; see also Dr. Huddle's Report, 2/1/2019, at 5 (unnumbered). Specifically, "[t]he initial event that caused his death was the blunt force trauma to his head, which was sustained on September 1st of 2016. Following that event, he remained unconscious and under continuous medical care, and he ultimately died due to those complications on December 6th, 2016." N.T., 2/12/2019, at 210; see also Dr. Huddle's Report, 2/1/2019, at 5 (unnumbered). When asked on cross-examination if Victim could have received more medical care instead of only comfort care, Dr. Huddle testified

---

[2] Dr. Zezulak was no longer employed by ForensicDX, the company that performed Victim's autopsy, at the time of Appellant's trial. ForensicDX tasked one of its current forensic pathologists, Dr. Huddle, with reviewing Dr. Zezulak's autopsy report in preparation for the trial. Dr. Huddle did so, and also reviewed the autopsy photographs, Victim's medical records, and histologic slides (slides created from pieces of Victim's organs for examination under a microscope) to create her own forensic autopsy report for Victim. N.T., 2/12/2019, at 155-57.

in her opinion that Victim could have continued to receive medical care, but it "would have just prolonged the inevitable." N.T., 2/12/2019, at 224.

Regarding the DNA evidence, Appellant's boots were confiscated on September 1, 2016, for processing. Following testing, it was determined that the right sole, left toe, and left sole contained DNA mixtures. The DNA profile obtained from the known reference sample for Victim matched the DNA profile from the right sole and left sole of Appellant's boots. In the mixture on the left toe, Victim could not be excluded as a contributor to the major component. Id. at 179-80.

After viewing the video of the altercation multiple times during the Commonwealth's case-in-chief, the jury requested and viewed the video three more times at regular speed, and three times at half speed, during deliberations. The jury found Appellant guilty as indicated above.

On April 17, 2019, the trial court sentenced Appellant to a term of life imprisonment for assault by life prisoner and a consecutive term of 20 to 40 years of incarceration for third-degree murder. The trial court granted Appellant's oral request for an extension of time to file a post-sentence motion. N.T., 4/17/2019, at 9-10. Thus, on May 7, 2019, Appellant timely filed a post-sentence motion challenging the sufficiency and weight of the evidence based on an argument that no evidence was presented to establish that Victim's death resulted from the prison altercation. The trial court denied Appellant's post-sentence motion the next day.

This timely-filed notice of appeal followed.[3]  On appeal, Appellant challenges the sufficiency and weight of the evidence.  Appellant's Brief at 3.

Preliminarily, we note that the trial court found Appellant's claims on appeal waived because his "concise statement [wa]s too vague to allow the [trial] court to identify the pertinent issues[.]"  Trial Court Opinion, 8/7/2019, at 1 (unnecessary capitalization omitted).  In pertinent part, Appellant's concise statement provided as follows.

1. Was the weight of the evidence supported by the evidence?

2. Was the verdict of the jury supported by the sufficiency of the evidence?

3. The trial transcript is not yet prepared and counsel would specifically request to amend these matters upon completion of the transcript.[4]

Pa.R.A.P. 1925(b) Statement, 7/1/2019.

We consider waiver based on a deficient Pa.R.A.P. 1925(b) statement mindful of the following.

> "When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review." Commonwealth v. Dowling, 778 A.2d 683, 686 (Pa. Super. 2001). "When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which

---

[3] Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

[4] The trial transcripts were filed on July 1, 2019, the same day Appellant filed his Pa.R.A.P. 1925(b) statement.  Although Appellant sought leave to amend his concise statement after the completion of the trial transcript, as of more than one month after the filing of the transcripts, no amendment had been filed.  See Trial Court Opinion, 8/7/2019, at 1 n.1.

is pertinent to those issues." In re Estate of Daubert, 757 A.2d 962, 963 (Pa. Super. 2000). "In other words, a [c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." Dowling, 778 A.2d at 686.

Commonwealth v. Seibert, 799 A.2d 54, 62 (Pa. Super. 2002).

We have repeatedly held that [i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Rule] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. ... Therefore, when an appellant's 1925(b) statement fails to specify the element or elements upon which the evidence was insufficient[,] … the sufficiency issue is waived on appeal.

Commonwealth v. Ellison, 213 A.3d 312, 320-21 (Pa. Super. 2019) (citations and quotation marks omitted). "Such specificity is of particular importance in cases where[] the appellant was convicted of multiple crimes[,] each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." Commonwealth v. Brown, 186 A.3d 985, 990 (Pa. Super. 2018) (citation and quotation marks omitted).

In the instant case, Appellant was convicted of assault by life prisoner, assault by prisoner, aggravated assault, and third-degree murder. Each of these crimes involves multiple elements. In Appellant's Pa.R.A.P. 1925(b) statement, he simply questioned, in boilerplate fashion, whether "the verdict of the jury [was] supported by the sufficiency of the evidence[.]" Pa.R.A.P. 1925(b) Statement, 7/1/2019. Appellant failed to specify which element(s) of which conviction(s) the Commonwealth failed to prove beyond a

reasonable doubt. As such, the trial court was unable to identify the errors Appellant intended to challenge on appeal. Consequently, we agree with the trial court and deem Appellant's sufficiency claim waived. See Commonwealth v. Hoffman, 198 A.3d 1112, 1125 (Pa. Super. 2018) (finding sufficiency claim waived for failing to specify the element(s) upon which the evidence was lacking); Commonwealth v. Tyack, 128 A.3d 254, 260 (Pa. Super. 2015) (finding sufficiency claim waived because boilerplate Pa.R.A.P. 1925(b) statement failed to specify the element(s) the Commonwealth failed to prove).

We next turn to Appellant's weight claim.

> As an initial matter, a challenge to the weight of the evidence must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607(A)(1)–(3). "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Comment to Pa.R.Crim.P. 607. If an appellant never gives the trial court the opportunity to provide relief, then there is no discretionary act that this Court can review. Commonwealth v. Thompson, 93 A.3d 478, 491 (Pa. Super. 2014). Further, [] issues not presented in a court-ordered Pa.R.A.P. 1925(b) statement are deemed waived on appeal.[7] Pa.R.A.P. 1925(b)(4)(vii).

---

[7] We note that, even if [Jones] had raised the specific weight claim for the first time in his Rule 1925(b) statement, it would not have "undone" the waiver resulting from [his] failure to raise the specific weight claim in accordance with Pa.R.Crim.P. 607. Commonwealth v. Ali, [] 10 A.3d 282 ([Pa. Super.] 2010).

- 8 -

Commonwealth v. Jones, 191 A.3d 830, 834-35 (Pa. Super. 2018) (some footnotes omitted).

In Appellant's post-sentence motion, he challenged the weight of the evidence with regard to his third-degree murder conviction. Specifically, he averred that the evidence was lacking as to causation, and that the forensic pathologists offered different opinions as to Victim's cause of death. Post-Sentence Motion, 5/7/2019, at 1-2 (unnumbered). In his Pa.R.A.P. 1925(b) statement, Appellant presented this claim in boilerplate fashion, merely asking whether "the weight of the evidence [was] supported by the evidence[.]" Pa.R.A.P. 1925(b) Statement, 7/1/2019. Finally, in the argument section of his brief, Appellant challenges the weight of the evidence based on (1) inconsistent opinions about causation from Dr. Huddle and Dr. Zezulak, (2) the video evidence, (3) his identification as the assailant, and (4) the DNA mixture on Appellant's boots. Appellant's Brief at 7-13. Because Appellant improperly raised new theories of relief for the first time on appeal (i.e., the video evidence, his identification, and the DNA mixture), his weight of the evidence claim based upon those theories is waived. See Jones, 191 A.3d at 835 ("Simply put, since [Jones] failed to raise his particular new weight theories before the trial court and the trial court did not, therefore, review the new theories and weigh the evidence according to it, there is no discretion for this Court to review." (citation omitted)).

Thus, the only weight claim Appellant preserved for appeal is that the verdict was against the weight of the evidence based upon the inconsistencies between the forensic reports of Dr. Huddle and Dr. Zezulak regarding causation.  We review this claim mindful of the following.

"A verdict is against the weight of the evidence 'where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'"  Commonwealth v. Williams, 176 A.3d 298, 312 (Pa. Super. 2017) (quoting Commonwealth v. Lyons, 833 A.2d 245, 258 (Pa. Super. 2003)).

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

Commonwealth v. Gibbs, 981 A.2d 274, 282 (Pa. Super. 2009) (citations omitted).

We examine challenges to the weight of the evidence according to the following standard.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.  A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.  The inquiry is not the same for an appellate court. Rather, when an

appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a weight claim using an abuse of discretion standard.

Commonwealth v. Jacoby, 170 A.3d 1065, 1080 (Pa. 2017) (citations and quotation marks omitted).

As discussed above, the trial court deemed Appellant's concise statement too vague to permit review. However, in the event this Court declined to find waiver, the trial court determined that Appellant's claims were without merit, noting that the jury had the benefit of the videotape of the prison altercation, that defense counsel "pointed out and argued all the discrepancies and inconsistencies in the evidence, and it was for the jury to decide who [sic] to believe." Trial Court Opinion, 8/7/2019, at 2.[5]

On appeal, Appellant argues that Dr. Zezulak's report should have garnered greater weight than Dr. Huddle's testimony or report because Dr. Zezulak performed the physical autopsy of Victim. Appellant's Brief at 8. Relying on Dr. Zezulak's report, Appellant argues the guilty verdict for third-

---

[5] We note that the trial court intermingles its analysis of Appellant's sufficiency-of-the-evidence and weight-of-the-evidence claims in its Pa.R.A.P. 1925(a) opinion, likely due in part to Appellant's intermingling of these issues in his post-sentence motion and the vagueness of his concise statement. Nonetheless, it is clear that the trial court considered Appellant's post-sentence motion challenging the weight of the evidence as to causation, and denied that motion because the jury's credibility determinations and verdict were not "so contrary to the evidence as to shock one's sense of justice." Trial Court Opinion, 8/7/2019, at 2. Thus, we need not remand for the filing of a supplemental opinion.

degree murder was against the weight of the evidence because Victim's "cause of death was morphine toxicity due to [Victim] being taken off of medical care and placed on palliative care alone." Id. at 9.

Appellant essentially asks this Court to reassess the credibility of Dr. Huddle and any inconsistencies between the two autopsy reports in Appellant's favor. "However, it is well settled that th[is] Court cannot substitute its judgment for that of the trier of fact." Gibbs, 981 A.2d at 282 (citation omitted). The jury heard Dr. Huddle's testimony regarding her review of Dr. Zezulak's report and the reasons why Dr. Huddle came to a different conclusion regarding Victim's cause of death. The jury additionally had the opportunity to review both the report prepared by Dr. Zezulak and the report prepared by Dr. Huddle. In rendering its verdict, the jury clearly credited Dr. Huddle's testimony and report, which "left no doubt that [A]ppellant's conduct" of stomping on Victim's head "started an unbroken chain of causation which led to [Victim's] death." Commonwealth v. Roberson, 403 A.2d 544, 545 (Pa. 1979) (citations omitted). Accordingly, the trial court did not abuse its discretion in denying Appellant's weight claim.

Judgment of sentence affirmed.

J-A09035-20 - 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  9/18/2020

- 13 -